IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMBASSADOR ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ELANCO ANIMAL HEALTH INCORPORATED and ELI LILLY AND COMPANY,<br><br>Defendants. | No. 20-cv-2886<br><br>Hon. Mary M. Rowland |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Ambassador Animal Hospital, Ltd. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge except as stated otherwise, allege the following upon information and belief against defendants Elanco Animal Health Incorporated ("Elanco") and Eli Lilly and Company ("Lilly") (collectively "Defendants"):

## PRELIMINARY STATEMENT

1. On behalf of itself and the class, Plaintiff seeks statutory damages and other relief from Defendants' practice of sending unsolicited advertisements by facsimile.

2. Defendants have sent advertisements by facsimile in an attempt to market or sell property, goods, or services.

3. The federal Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), prohibits any person or entity from sending or having an agent send any "unsolicited advertisement" by facsimile ("junk faxes" or "unsolicited faxes").

4. The TCPA mandates that if a person or entity sends an otherwise-unsolicited advertisement by facsimile to a fax recipient with which the sender has an "established business relationship," then the sender must include a specific, clear, and conspicuous opt-out notice on the first page of the advertisement. *See* 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii).

5. The TCPA provides a private right of action and provides minimum statutory damages of $500 per violation. If the Court finds the advertisements were sent knowingly or willfully, then the Court can increase the damages up to three times $500.

6. Unsolicited faxes damage their recipients. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. Such a "junk fax" interrupts the recipient's privacy. Unsolicited faxes tie up telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, use paper and ink toner for the sender's marketing purposes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

7. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA and the common law of conversion.

8. Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## PARTIES, JURISDICTION AND VENUE

9. Plaintiff is an Illinois corporation with its principal place of business in Oak Park, Illinois.

10. Elanco is a Delaware corporation with its principal place of business in Greenfield, Indiana.

11. Lilly is a Delaware corporation with its principal place of business in Indianapolis, Indiana.

12. Jurisdiction is conferred by 28 U.S.C. § 1331, because the TCPA is a federal statute conferring federal question jurisdiction.

13. Venue is proper in this Court because some of the tortious acts complained of occurred in this District. Specifically, some of the faxes alleged herein were received in this District.

## FACTS

14. Defendant Elanco is an international provider of products and services for the animal health and food-animal production industries. In April 2018, Elanco was a division of Lilly. In September 2018, Lilly spun off part of its stake in Elanco

through an initial public offering, and later disposed of all its remaining shares in March 2019.

15. Lilly is a global healthcare and pharmaceutical company.

16. On information and belief, Defendants have sent thousands of advertisements in fax broadcasts to one or more lists of targeted recipients throughout the United States and throughout the class period alleged herein. At least two of those faxes were sent to Plaintiff in April 2018, copies of which are attached as Exhibit A and Exhibit B respectively.

17. Exhibit A, Exhibit B, and other faxes sent by or on behalf of Defendants advertised the commercial availability or quality of property, goods, or services available for purchase from Defendants.

18. The faxes from Elanco invited veterinarians or veterinary practice owners to attend and participate in programs on topics of interest to veterinarians and issues served by one or more goods or services commercially available from Elanco. Both Exhibit A and Exhibit B prominently feature the Elanco logo at top and bottom and the fax header says they are "Fm: Elanco Animal Health."

19. Exhibit A and Exhibit B appear to offer a free meal and "CE Credit" in exchange for attendance.

20. At all times relevant, Plaintiff knew the name Elanco and that the company sells products used by many veterinarians, but Plaintiff had no business relationship with Elanco.

4

21. Plaintiff did not respond to the program invitations or attend any of the offered programs.

22. On information and belief, Elanco used the program invitations and programs to market its animal health goods and services.

23. Exhibit A invited Veterinarians and Veterinary Practice Owners to attend a program at the Maggiano's Woodfield restaurant to attend a "Dinner & Presentation at 7:00PM" to discuss "Canine and Feline Disease Prevention Hot Topics."

24. Elanco sells a wide variety of products to accomplish canine and feline disease prevention. *See* https://www.elanco.us/products-services/cats and https://www.elanco.us/products-services/dogs, printouts of which are Group Exhibit C.

25. Exhibit A directed recipients to RSVP by calling "Jim Archer (312) 961-9778."

26. On information and belief, Jim Archer is an employee of Elanco Animal Health. According to Linkedin, since February 2016, Jim Archer has been "Senior District Manager at ELANCO ANIMAL HEALTH" in the "Greater Chicago Area." https://www.linkedin.com/in/jimarcher1/ (last visited on 3/18/21). According to his Linkedin page, Mr. Archer possesses among other things an "outstanding ability to establish productive business relationships with existing accounts to guarantee client retention and loyalty, while prospecting for new business opportunities." *Id*.

27. Based on these facts, it is reasonable to conclude that Elanco used the program on Feline and Canine Disease Prevention Hot Topics, at least in part, to market its goods and services, such as those described in Exhibit C.

28. What was said to persons who called Elanco in response to the program invitation, what Elanco did with their contact information after that time, who attended, what was displayed, what was made available, and what was said during the program promoted in Exhibit A, and what if any follow-up communications were made are within the knowledge and control of Defendants and can be established through discovery.

29. Exhibit B invited Veterinarians to attend a dinner program catered by the Bucca Di Beppo restaurant on April 24, 2018, 7:00PM, to discuss "Rethinking Management of Osteoarthritis."

30. Among other things, Elanco sells Galliprant, which is a drug it markets as "a first-of-its-kind targeted NSAID for canine osteoarthritis pain and inflammation." *See* www.galliprantfordogs.com, the printout of which is attached as Exhibit D.

31. Exhibit B directed recipients to RSVP by calling "Nicole Cochran, Elanco 773-343-4814" or "Taylor Johnson, MWI 610-246-6733."

32. On information and belief, Nicole Cochran is an employee of Elanco Animal Health. According to Linkedin, since January 2015, Ms. Cochran has been "Executive Territory Manager at Elanco Animal Health" in Deerfield, IL. https://www.linkedin.com/in/cochrannicole/ (last visited 3/18/21). According to Ms.

6

Cochran's Linkedin page, "If you were to ask any of my clients, peers or new hires I've mentored to describe me in three words or less, they would most likely highlight my adaptive communication style, my drive and focus on surpassing goals through unique sales strategies and my relentless pursuit of pure teamwork and collaborative success." *Id.*

33. Based on these facts, it is reasonable to conclude that Elanco used the Rethinking Management of Osteoarthritis program, at least in part, to market Galliprant or other products Defendants manufacture and sell.

34. What was said to persons who called Elanco in response to the program invitation, what Elanco did with their contact information after that time, who attended, what was displayed, what was made available, and what was said during the program promoted in Exhibit B, and what if any follow-up communications were made are within the knowledge and control of Defendants and can be established through discovery.

35. Near their bottom, both Exhibit A and Exhibit B appear to read as follows:

> As a result of enacted state and federal legislation, if you are a licensed veterinarian with an active license from MN, a Veterans Affairs employee, and/or a state government employee, you may be restricted from accepting industry-provided food/beverage and/or educational item(s). Please consult our state or federal regulations or ethics laws.

> This program is intended only for invited animal healthcare professionals or other appropriate personnel for whom the information that is being presented will be relative to their practice. We regret that spouses or other guests who are not affiliated with the practice cannot be accommodated.

36. The programs in the faxes in <u>Exhibit A</u> and <u>Exhibit B</u> were to be held in Schaumburg, Illinois and Buffalo Grove, Illinois, respectively. On information and belief, Elanco also promoted, sponsored, and paid for programs (including meals) at other locations in Illinois and other states, including versions of the same programs described on the faxes attached to this Amended Complaint. On information and belief, Elanco promoted those programs through faxes similar to the faxes attached to this Amended Complaint, and used them to market its animal health goods and services.

37. The programs and the faxes promoting them were generated by Defendants for marketing purposes and served to raise customer awareness of Defendants and to increase sales of Defendants' goods and services.

38. The programs and the faxes promoting them were designed to draw potential customers' attention to Defendants and their goods and services.

39. Plaintiff is among the persons to whom Defendants sent advertisements by fax.

40. Plaintiff did not expressly invite or give permission to anyone to send any advertisement by fax from Defendants.

41. Defendants' faxes did not contain the opt-out notice required by the TCPA. *See, e.g.,* <u>Exhibit A</u>.

42. On information and belief, Defendants sent faxes to Plaintiff and more than 39 other recipients without their prior express permission or invitation, and without the opt-out notice required on faxes sent to persons with whom Defendants

8

can demonstrate an "established business relationship." This allegation is based, in part, on the fact that Plaintiff never expressly invited or permitted anyone to fax any advertisement regarding Defendants, the fact that the subject fax advertisements are standardized forms unaddressed to any particular person at Plaintiff's business, the fact that broadcasting advertisements by fax is an inexpensive way to reach a wide audience, and the fact that the faxes attached as <u>Exhibit A</u> have no opt-out notice.

## CLASS REPRESENTATION ALLEGATIONS

43. Plaintiff brings this action as a class action on behalf of itself and a class of all others similarly situated and initially defined as follows:

> All persons sent one or more telephone facsimile messages: (1) on or after April 9, 2015; (2) from or on behalf of Elanco or Lilly; (3) inviting participation or attendance in a program about a topic addressed by one or more of Elanco or Lilly's commercially-available goods or services; (4) without the fax recipient's prior express invitation or permission; and (5) without the clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

Plaintiff anticipates modifying the proposed class definition-including proposing subclasses if appropriate-after discovery about the scope of Defendants' fax advertising practices as well as discovery as to any potential affirmative defenses Defendants may plead.

44. Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, and any Judge assigned to this action, and his or her family.

45. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. The action satisfies Rule 23 (a)'s numerosity,

9

commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

46. **Numerosity/impracticality of joinder.** The class includes more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. Plaintiff does not know the precise number of class members or their identities, but expects obtain such information from Defendants' records or the records of third parties.

47. **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. The action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common

in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

48. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. The action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

49. **<u>Numerosity/impracticality of joinder.</u>** The class includes more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. Plaintiff does not know the precise number of class members or their identities, but expects obtain such information from Defendants' records or the records of third parties.

50. **<u>Commonality and predominance.</u>** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

11

      a.      Whether Defendants sent unsolicited advertisements by fax;

      b.      Whether Defendants' faxes, or the programs promoted in the faxes, advertised the commercial availability or quality of any property, goods, or services;

      c.      The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent advertisements by fax;

      d.      Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

      e.      Whether Defendants included clear and conspicuous opt-out notices on their faxed advertisements, including all content the TCPA requires;

      f.      Whether each Defendant is directly or vicariously liable for violating the TCPA;

      g.      Whether Plaintiff and the other class members are entitled to statutory damages;

      h.      Whether Defendants should be enjoined from faxing advertisements in the future;

      i.      Whether the Court should award trebled damages; and

      j.      Whether Defendants' conduct constituted common law conversion.

51.    **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because all were injured by the same wrongful conduct. Each class member received one or more of Defendants' unsolicited advertisements by

facsimile during broadcasts to multiple targeted recipients. If Plaintiff prevails on its claims, then the other class members will prevail as well.

52. **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained attorneys who are competent and experienced in complex class action litigation, and in TCPA litigation in particular. Plaintiff intends to vigorously prosecute this action. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interest of the class.

53. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford and wanted to undertake individual litigation, such cases would unduly burden the court system. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

54. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

55. Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons.

13

56. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

57. The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

58. The TCPA provides:

> 3. <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) Both such actions.

47 U.S.C. § 227 (b) (3).

59. In relevant part, the TCPA states that "[t]he [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection ... in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (i) the notice is clear and conspicuous…." 47 U.S.C. § 227 (b) (2) (D) (i).

14

60. Additionally, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if … (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful…." 47 U.S.C. § 227 (b) (2) (D) (ii). The shortest reasonable time has been determined to be thirty (30) days. 47 C.F.R. § 64.1200 (a) (4) (iii) (B).

61. The opt-out notice must also include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice…." 47 U.S.C. § 227 (b) (2) (D) (iv).

62. "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if … (v) the telephone and facsimile machine numbers and the cost-free mechanism … permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227 (b) (2) (D) (v).

63. The FCC's regulations of opt-out notices on facsimile advertisements are set forth at 47 C.F.R. § 64.1200 (a) (4) (iii)

64. The Court, in its discretion, can treble the statutory damages if the violation was knowing or willful. 47 U.S.C. § 227.

65. Defendants violated 47 U.S.C. § 227 *et seq.* by sending advertisements by fax to Plaintiff and the other class members without their prior express invitation or permission and, to the extent Defendants will contend they sent the facsimiles on the basis of "established business relationship," by failing to include the clear, conspicuous, and content-rich opt-out notice required on the first page of each such facsimile.

66. Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material, and to provide the various cost-free means Congress required to be made available to do so. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the recipients are unable to stop the burdens imposed by this form of advertisement.

67. The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if their actions were negligent.

68. Each Defendant is liable because, respectively, it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority and ratification.

69. Defendants knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendants or

16

anybody else to send them advertisements by facsimile and that the faxes did not display the opt-out notices required by the TCPA (including the FCC's regulations).

70. Defendants' actions caused damages to Plaintiff and the other class members. Receiving Defendants' junk faxes caused recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, the subject faxes used Plaintiff's and the class's fax machines. The subject faxes cost Plaintiff time, as Plaintiff's valuable time was wasted receiving and reviewing Defendants' illegal faxes, time that otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of the faxes occurred outside Defendants' premises.

71. Even if Defendants did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in their favor and against Defendants jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500.00 in statutory damages for each violation of the TCPA;

C. That the Court treble the statutory damages to $1,500 per violation if it finds that either Defendants' conduct was knowing or willful;

D. That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

E. That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

72. Plaintiff incorporates all paragraphs preceding Count I as though fully set forth herein.

73. Plaintiff brings Count II on behalf of itself and a class of similarly-situated persons and alleging claims under the common law of conversion.

74. By sending unsolicited faxes to Plaintiff and the other class members, Defendants improperly and unlawfully converted their fax machines, toner, and paper to Defendants' own use. Defendants also converted the recipients' time to their own marketing use.

75. Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

76. By sending the unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

77. Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

78. Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

79. Each of Defendants' unsolicited faxes that Plaintiff received effectively stole Plaintiff's time by forcing one or more employees to receive, review, and act upon Defendants' illegal faxes. Just the time spent in retrieving an unsolicited facsimile from the fax machine, reviewing it, and tossing it in the garbage can is burdensome and wasteful and converts Plaintiff's valuable time to Defendants' marketing effort. Defendants knew or should have known business time is valuable to Plaintiff.

WHEREFORE, Plaintiff demands judgment in favor of itself and the entire class of similarly-situated others and against Defendants jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award appropriate damages;

C. That the Court award punitive damages.

D. That the Court award reasonable attorney's fees;

E. That the Court award costs of suit; and

F. That the Court award such further relief as it may deem just and proper.

    Respectfully submitted,

    AMBASSADOR ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons,

    By: /s/ Phillip A. Bock
        One of its attorneys

    Phillip A. Bock
    David M. Oppenheim
    BOCK HATCH & OPPENHEIM, LLC
    134 N. La Salle St., Ste. 1000
    Chicago, IL 60602
    Telephone: 312-658-5500
    Facsimile: 312-658-5555
    service@classlawyers.com